IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NASHWA ABDULSALAM,<br><br>                   **Plaintiff,**<br><br>      vs.<br><br>**BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and UNIVERSITY OF NEBRASKA MEDICAL CENTER;**<br><br>                   **Defendants.** | 4:22CV3004<br><br>**ORDER** |

       This matter comes before the Court on the Motion to Strike Jury Demand (Filing No. 36) filed by Defendants, Board of Regents of the University of Nebraska ("BORU") and the University of Nebraska Medical Center ("UNMC"). Defendants request that the Court strike Plaintiff's demand for a jury trial for her claim under Title IX. For the following reasons, the Court will grant the motion.

## BACKGROUND

       Plaintiff, a female physician, began a three-year cardiology fellowship program at UNMC in July 2017. Beginning in August 2017, Plaintiff alleges she was verbally harassed, and then in January 2018, sexually harassed, by one of her male co-fellows. Plaintiff alleges she first reported the harassment to an appropriate UNMC official in January 2018, and thereafter continued to report to appropriate persons the continued harassment and retaliation, but the harassment and retaliation continued and/or worsened until she completed her fellowship in June 2020. Plaintiff filed this action on January 22, 2022, alleging Defendants were deliberately indifferent to the ongoing harassment and toxic environment, and that Defendants' actions caused Plaintiff to be denied on the basis of her sex from participation in, and/or be denied the benefits of, and/or be subjected to discrimination in violation of Title IX. (Filing No. 1).

       Defendants have now filed a motion to strike Plaintiff's jury demand for her claim under Title IX. (Filing No. 36). Defendants argue Plaintiff does not have a constitutional or statutory right to a jury trial against them, as a state agencies, because although Title IX waives their

sovereign immunity from suit, there is no clear or express language waiving their sovereign immunity from jury trial. (Filing No. 37 at pp. 1-3).

## ANALYSIS

Defendants assert neither Title IX nor the Seventh Amendment grants a right to a jury trial in a Title IX action against the state or a state entity. Before inquiring into the applicability of the Seventh Amendment in this case, the Court must first "'ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998) (quoting *Tull v. United States*, 481 U.S. 412, 417, n. 3 (1987)) (alteration in original; *accord Curtis v. Loether*, 415 U.S. 189, 192, n. 6 (1974) ("[T]he cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the (constitutional) question may be avoided.") In this case, the constitutional question cannot be avoided because the provisions of Title IX do not contain explicit textual authorization for a jury trial. See 42 U.S.C. § 2000d-7 (2018).

The right to a jury trial in suits over twenty dollars at common law is a protection guaranteed by the Seventh Amendment. U.S. Const. amend. VII. "[T]he thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791," and "applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42 (1989) (citing *Curtis*, 415 U.S. at 193). "To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought." *Tull v. United States*, 481 U.S. 412, 417 (1987). The Supreme Court has established a two-part test to determine whether the Seventh Amendment applies to a particular cause of action. See *id.* at 417-18. First, the court must compare the statutory action to an "18th century action brought in the courts of England prior to the merger of the courts of law and equity" in order to determine whether similar cases were brought before a jury. *Id.* If it is a type of action analogous to a suit customarily brought in the English law court, the court must next determine whether the remedy sought is legal or equitable in nature. *Id.* If the remedy sought is legal in nature, then the Seventh Amendment provides a right to a jury trial. See *id.*

In this case, the Court must first determine whether Plaintiff's cause of action against Defendants under Title IX is analogous to an action that could have been brought at law in 1791. *See Curtis*, 415 U.S. at 194; *Tull*, 481 U.S. at 417. When the Seventh Amendment was adopted, there was no action equivalent to Plaintiff's Title IX claim against Defendants, as state entities. "[A]t common law no action for damages . . . lay against public officials acting in their official capacities as agents of the sovereign." *Buss v. Douglas*, 59 F.R.D. 334, 336 (D. Neb. 1973). "If the action is a common law suit or the particular issues arise in a common law suit, but no right of jury trial existed under the common law of England as to that type of action, then there is no right to a jury trial by virtue of the Seventh Amendment." *Westcott v. City of Omaha*, No. CV88-0-28, 1988 WL 383125, at *2 (D. Neb. Apr. 11, 1988). "[S]ince there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial." *Gragg v. City of Omaha,* 812 F. Supp. 991, 992-3 (D. Neb. 1993) (citing *Galloway v. United States,* 319 U.S. 372, 388-9 (1943)).

As state agencies, Defendants are entitled to state sovereign immunity under the Eleventh Amendment, the Nebraska Constitution, and common law. See *Doe v. University of Nebraska,* 451 F. Supp. 3d 1062, 1101 (D. Neb. 2020). Although a sovereign may consent to a lawsuit against it or its agents, the consent must occur on the sovereign's own terms. See *United States v. Sherwood,* 312 U.S. 584, 586 (1941). "Courts 'give effect' to a state's waiver of sovereign immunity 'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Church v. Missouri*, 913 F.3d 736, 743 (8th Cir. 2019) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990)); see also *Burke v. Bd. of Trustees of Nebraska State Colleges*, 924 N.W.2d 304, 311 (Neb. 2019) ("A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction."). "[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); see also *Edwards v. Douglas Cnty.*, 953 N.W.2d 744, 750-51 (Neb. 2021) ("[S]tatutes purporting to waive the protection of sovereign immunity are to be strictly construed in favor of the sovereign and against waiver.").

Nebraska has waived its immunity on its own terms through the adoption of the Political Subdivision Tort Claims Act ("PSTCA"). See Neb. Rev. Stat. § 13-902. Under the PSTCA,

Nebraska does not consent to a trial by jury, and instead requires suits to "be heard and determined by the appropriate court without a jury." Neb. Rev. Stat. § 13-907. The PSTCA provides:

> …no political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and that no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act. The Legislature further declares that it is its intent and purpose through this enactment to provide uniform procedures for the bringing of tort claims against all political subdivisions, whether engaging in governmental or proprietary functions, and that the procedures provided by the act shall be used to the exclusion of all others.

Neb. Rev. Stat. § 13-902.[1]  The PSTCA defines a tort claim as "any claim against a political subdivision for money . . . caused by the negligent or wrongful act or omission of any employee within the political subdivision, while acting within the scope of his or her office or employment." Neb. Rev. Stat. § 13-903(4). If an officer or employee is acting within the scope of his or her office or employment and the conduct falls within an exception to Nebraska's waiver of tort immunity, the PSTCA bars a tort claim against the officer or employee, regardless of the capacity in which he or she was allegedly sued. *Davis v. Nebraska*, 902 N.W.2d 165, 181 (Neb. 2017). "Although Nebraska has, by statute, waived its sovereign immunity with respect to suits against its political subdivisions . . . this waiver is limited and does not permit such actions to be tried before a jury." *Villaneuva v. City of Scottsbluff,* No. 4:11CV31185, 2012 WL 45406 at * 1 (D. Neb. 2012) (citing *Rohren v. Centennial Public School Dist. 67-R,* 2007 WL 4118943 at *1 (D. Neb. 2007)).

Plaintiff argues that the PSTCA is inapplicable to this case because her claim for sexual discrimination is brought under Title IX and is not analogous to any tort claim. (Filing No. 40 at pp. 7-8). Plaintiff is correct that the PSTCA is not directly applicable to her claim under Title IX; however, it is relevant to the first step of the inquiry under *Tull,* that is, to determine whether her Title IX action is comparable to an "18th century action brought in the courts of England prior to the merger of the courts of law and equity" in order to determine whether similar cases were brought before a jury. *Tull*, 481 U.S. at 417-18. Plaintiff's cause of action under Title IX is closest to a tort claim, as "torts are remedies for invasions of certain rights, such as the rights to

---

[1] The PSTCA does not apply to certain delineated cases, none of which are applicable here. See Neb. Rev. Stat. § 13-910.

personal security, personal liberty, and property." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 727 (1999) (Scalia, J., concurring) (citation omitted). And if, as Plaintiff argues, her claim under Title IX does not sound in tort, there is no other clearly analogous claim customarily brought in the English law court in 1791. See, e.g., *Frosh ex rel. Rohrbouck v. N. Platte Pub. Sch.*, No. 7:06 CV 5014, 2006 WL 3388642, at *2 (D. Neb. Nov. 21, 2006) ("[S]uits against the State or a school district are not 'suits at common law.'"). The common law of England did not permit jury trials against public officials and, accordingly, the Seventh Amendment does not permit a jury trial against a State and its subdivisions. *Pettigrew v. Valentine Cmty. Sch.*, No. 4:11CV3166, 2012 WL 4894584, at *1 (D. Neb. Oct. 15, 2012); see also *Frosh ex rel. Rohrbouck v. N. Platte Pub. Sch.*, No. 7:06 CV 5014, 2006 WL 3388642, at *2 (D. Neb. Nov. 21, 2006) ("[S]uits against the State or a school district are not 'suits at common law.'"). Since there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial. *Villaneuva*, 2012 WL 45406 at * 1; see also *Tull*, 481 U.S. at 417 (requiring the court to first compare the statutory action to an "18th century action brought in the courts of England prior to the merger of the courts of law and equity" in order to determine whether similar cases were brought before a jury).

Plaintiff also argues that because Defendants accepted federal funds, they have waived their immunity from Title IX claims. (Filing No. 40 at pp. 1-2). It is undisputed that a state voluntarily waives sovereign immunity against suits for alleged Title IX violations by accepting federal financial assistance. See *Fryberger v. Univ. of Arkansas,* 889 F.3d 471, 474 (8th Cir. 2018) (discussing 42 U.S.C. § 2000d-7(a)(1)). However, nothing in the language of Title IX or 42 U.S.C. § 2000(d)-7 explicitly imposes a waiver of sovereign immunity that includes a jury trial or that requires a trial by jury. Rather, the statute is silent on the issue of a party's right to a jury trial. Without an explicit waiver of immunity as it relates to a jury trial, the Court will construe the scope of waiver in favor of immunity. See *Blue Fox*, 525 U.S. at 261 ("[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign."); see also *Frosh ex rel. Rohrbouck*, 2006 WL 3388642, at *2 ("There is no provision in the Rehabilitation Act or the [Individuals with Disabilities Act] either imposing a waiver of sovereign immunity including a jury trial or even requiring trial by jury.").

Defendants, as state agencies, have sovereign immunity. Although Title IX waives state sovereign immunity from suit, there is no provision in Title IX imposing a waiver of sovereign

immunity that includes a right or requirement to jury trial. Because there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial. As such, Plaintiff is not entitled to a jury trial for her claim against Defendants. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Strike Jury Demand ([Filing No. 36](Filing No. 36)) is granted. Plaintiff's demand for a jury trial is stricken.

Dated this 6th day of March, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge