IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NASHWA ABDULSALAM,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and THE UNIVERSITY OF NEBRASKA MEDICAL CENTER,<br><br>　　　　　Defendants. | 4:22–CV–3004<br><br>MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

Plaintiff Nashwa Abdulsalam filed suit against the Board of Regents of the University of Nebraska (the Regents) and the University of Nebraska Medical Center (UNMC) alleging violations of Title IX of the Education Amendments of 1972. *See generally* Filing 1. This matter is now before the Court on Defendants' Motion for Judgment on the Pleadings. Filing 52. Abdulsalam opposes the motion. Having considered the parties' respective filings, pertinent portions of the record, and the applicable law, the Court grants Defendants' Motion in full. For the reasons explained in this Order, UNMC is dismissed as an improperly named party pursuant to Rule 17(b)(3) of the Federal Rules of Civil Procedure, and the Regents are entitled to judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

I. BACKGROUND

A. Factual Background[1]

Abdulsalam states in her Complaint that she "is a female and a graduate of the University of Nebraska Medical Center." Filing 1 at 2 (¶7). Specifically, she participated in a "three-year

---

[1] Unless otherwise indicated, the following facts are taken from Abdulsalam's Complaint. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (explaining that on a Rule 12(c) motion for judgment on the pleadings

1

cardiology fellowship program" with UNMC that began in July of 2017 and concluded in June of 2020. Filing 1 at 2, 7 (¶¶7, 36). Abdulsalam alleges that one of her co-fellows started verbally harassing her in August of 2017. Filing 1 at 4 (¶17). However, after reporting this harassment in January of 2018, "retaliatory behavior from others started and continued until [she] completed her fellowship in June 2020." Filing 1 at 4 (¶17). According to her, "The harassment by fellow male students was so severe, pervasive, and objectively offensive that it effectively deprived her of access to educational benefits or opportunities provided by" UNMC. Filing 1 at 4 (¶17).

She also alleges that UNMC "had actual knowledge of this harassment" because she "reported said harassment to . . . an official [at UNMC] with the power to take action to correct the discrimination." Filing 1 at 4 (¶18). Specifically, Abdulsalam says that she reported "both verbal and physical harassment" to "appropriate persons at the fellowship program and the Title IX office at the medical center." Filing 1 at 4 (¶19). She also cites a particular instance in her Complaint where she says that "on or about June 28, 2018, [she] reported to appropriate persons that her environment at [UNMC] was 'very toxic[.]'" Filing 1 at 4 (¶20). Despite making this report, Abdulsalam says that "the Title IX investigation only resulted in retaliatory conduct towards" her, and that "[a]s a proximate result of reporting the sex harassment to the Title IX office, [she] was retaliated against, and the harassment did not stop but continued." Filing 1 at 4–5 (¶21).

Abdulsalam claims that she reported "the toxic environment and the retaliatory behavior of her co-fellows" to Dr. Chandrakanth Are, the Associate Dean of Graduate Medical Education and a "Designated Institutional Official" at UNMC. Filing 1 at 5 (¶23). However, she asserts that

---

a district court must "'accept as true all factual allegations set out in the complaint' and . . . 'construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor'") (alterations in original) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir.2006).

"Dr. Are failed to take any action and instead informed [her] that 'life is unfair[.]'" Filing 1 at 5 (¶23). "After the inaction by Dr. Are, [Abdulsalam] reached out to [the Accreditation Counsel for Graduate and Medical Education (ACGME)] directly and, as a result, Dr. Are was required to investigate [Abdulsalam's] complaints[.]" Filing 1 at 5 (24). Although Dr. Are ultimately "concluded there were no issues with the program[,]" Abdulsalam states that she "was not contacted as part of the investigation and was never given an opportunity to explain and describe the toxic environment or when and how it occurred." Filing 1 at 5 (¶24).

Abdulsalam also alleges that she reported harassing behavior and retaliatory conduct to Dr. Debra Romberger, the Chair of Medicine, and Dr. Daniel Anderson, the Chief of Cardiology. *See* Filing 1 at 5–6 (¶¶25–26). Specifically, on or about February 28, 2019, Abdulsalam reported to Dr. Anderson that although she had "been verbally and physically harassed by one fellow student beginning in January 2018" and reported this harassment to the Title IX office, "the environment had gotten worse for her and now more than one student was harassing her in retaliation for reporting to the Title IX office." Filing 1 at 6–7 (¶30). Abdulsalam claims that she reported "ongoing harassment" to Dr. Anderson again on October 10, 2019, as well as November 18, 2019. Filing 1 at 7 (¶¶31–32). However, she asserts that "no action was taken by any of the defendants or its employees or, officers, and/or agents to end the harassment." Filing 1 at 7 (¶32). Abdulsalam further alleges that on February 5, 2020, she advised Dr. Anderson "that the hostile environment was continuing and worsening[,]" and specifically reported that one co-worker "told her that 'men should be aware of women who file false sexual harassment allegations and not stay with them in a room with a closed door as this protects men from having lies said about them.'" Filing 1 at 7 (¶33). Despite this, Abdulsalam claims "no action was taken to protect" her. Filing 1 at 7 (¶33).

3

Abdulsalam does not allege any specific counts in her Complaint. *See generally* Filing 1. However, she generally claims that the defendants were "deliberately indifferent to the ongoing harassment and toxic environment" despite having "actual knowledge of this harassment and retaliatory conduct[.]" Filing 1 at 8 (¶¶ 37, 38). As a result, she asserts that she "suffered ongoing damages including, but not limited to, humiliation, mental anguish, suffering, anxiety, and inconvenience, past present, and future, all to her damage." Filing 1 at 8 (¶41). She therefore seeks "judgment against the defendants for compensatory damages which will fairly and justly compensate her for her damages together with costs of this action including reasonable attorney's fees and costs." Filing 1 at 8.

### B. Procedural Background

Defendants filed this present Motion for Judgment on the Pleadings on March 30, 2023. Filing 52. They raise three arguments in support of their Motion. *See* Filing 53 at 3, 5, 7. First, Defendants argue that UNMC is not a proper defendant because it does not have the capacity to be sued under Nebraska law. Filing 53 at 4. Second, Defendants contend that Abdulsalam's claim for damages relating to emotional distress cannot survive because such damages are unavailable under Title IX based on the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1572 (2022). Filing 53 at 5. Third, Defendants posit Abdulsalam has failed to adequately plead any recoverable damages (*i.e.*, she "has not specifically stated that she has suffered any special damages or plausibly alleged any actual, recoverable damages"). Filing 53 at 9. Defendants therefore ask this Court to dismiss UNMC as an improperly named Defendant pursuant to Federal Rule of Civil Procedure 17(b)(3), and to grant the Regents judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Filing 53 at 2–4.

## II.  LEGAL ANALYSIS

### A.  Rule 12(c) Standards

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). When reviewing a Rule 12(c) motion, the Court must "view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Ashley Cnty.*, 552 F.3d at 665 (quoting *Wishnatsky*, 433 F.3d at 610); *Poehl*, 528 F.3d at 1096. To survive such a motion, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (noting the plausibility standard from *Twombly* and *Iqbal* "applies to Rule 12(c) motions").

Although defendants move for "judgment" on the pleadings pursuant to Rule 12(c), at various points in their opening brief they ask that this Court "dismiss" Abdulsalam's Complaint with prejudice. See Filing 53 at 2, 9. There is a difference between seeking a judgment and seeking dismissal. *Cf. Self v. I Have A Dream Found.-Colorado*, 552 F. App'x 782, 783 (10th Cir. 2013) (noting "dismissal and summary judgment are two different dispositions") (citing Bradley Scott Shannon, *A Summary Judgment Is Not a Dismissal!*, 56 Drake L. Rev. 1 (2007)). Defendants cannot timely move for dismissal under Rule 12(b)(6) at this stage because they already submitted

their Answer, Filing 16. *See* Fed. R. Civ. P. 12(b); *Sletten & Brettin Orthodontics, LLC v. Cont'l Cas. Co.*, 782 F.3d 931, 934 n.2. They are left to rely on Rule 12(h)(2)(B), which allows a party to move for relief based on the failure to state a claim after answering "by a motion under Rule 12(c)[.]" Fed. R. Civ. P. 12(h)(2)(B). Thus, the Eighth Circuit has said, "the distinction between a Rule 12(c) and a Rule 12(b)(6) motion is 'purely formal[.]'" *Sletten*, 782 F.3d 934 n.2.

At the same time, Eighth Circuit precedent is also clear that in order for a court to grant a Rule 12(c) motion, the movant must "clearly establish that there are no material issues of fact and that it is entitled to judgment as a matter of law." *Levitt v. Merk & Co Inc.*, 914 F.3d 1169, 1171 (8th Cir. 2019) (cleaned up) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). This aspect of the Rule 12(c) standard more closely resembles the summary judgment standard attendant to Rule 56. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute of fact and the movant is entitled to judgment as a matter of law"). Accordingly, because this matter is before the Court on a Rule 12(c) motion for "judgment" on the pleadings, the Court is tasked with determining whether it should enter "judgment" in favor of the moving party, not whether it should dismiss the non-movant's Complaint.

### B. UNMC is Not a Proper Defendant

As a threshold matter, the Court agrees with UNMC that it is not a proper defendant in this action. Where Federal Rule of Civil Procedure 17(b)(3) applies, the capacity to sue or be sued is generally determined "by the law of the state where the court is located[.]" *See* Fed. R. Civ. P. 17(b)(3). Under Nebraska law, the Board of Regents is "a body corporate" that "may sue and be sued[.]" Neb. Rev. Stat. § 85-105. Because the Nebraska legislature "mandated that the capacity [to be sued] resides in the Board of Regents," UNMC "only has the capacity to be sued in an action against the Board of Regents[.]" *See Lundquist v. Univ. of S. Dakota Sanford Sch. of Med.*, 705

6

F.3d 378, 381 (8th Cir. 2013) (affirming the district court's order made pursuant to Rule 17(b) that a medical school lacked the capacity to be sued under South Dakota law). Even though UNMC specifically raised this issue in its opening brief, *see* Filing 53 at 3–5, Abdulsalam does not acknowledge—much less contest—this matter in her opposition brief. *See generally* Filing 60; *see also* Filing 61 at 2 n.1. For these reasons, the Court will dismiss UNMC as an improperly named defendant in this action pursuant to Rule 17(b)(3) of the Federal Rules of Civil Procedure. The Court now considers Abdulsalam's Title IX claims against the Board of Regents—the proper defendant.

### C. The Regents Are Entitled to Judgment on the Pleadings

#### 1. *The Parties' Arguments*

Relying principally on the Supreme Court's recent decision in *Cummings*, the Regents argue that a plaintiff cannot pursue damages for emotional distress, humiliation, mental pain, or related damages in a lawsuit brought pursuant to Title IX. Filing 53 at 7. Abdulsalam admits, "her claim is for emotional distress[,]" Filing 60 at 1, but she contends that *Cummings* "is inapplicable to the present Title IX matter" because that case was brought pursuant to the Affordable Care Act and Rehabilitation Act. Filing 60 at 1. Abdulsalam acknowledges that in the wake of *Cummings*, "there are courts that have adopted the position of the Defendants that Title IX does not allow for emotional distress damages." Filing 60 at 1–2. Nevertheless, she insists that this matter has "not been decided in the District of Nebraska or by the Eighth Circuit Court of Appeals." Filing 60 at 2. Abdulsalam therefore urges this Court to follow the path a Magistrate Judge in the Northern District of Indiana took when he ruled on a motion in limine in *Doe v. Purdue Univ.*, No 18–cv–89–JEM, 2022 WL 2828238 (N.D. Ind. July 20. 2022). Abdulsalam cites this order as an example where a federal court "rejected the argument that emotional distress damages are not available in a Title IX case." Filing 60 at 2.

7

*2. Applicable Standards*

In *Cummings*, the Supreme Court held "that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes" at issue in that case. *Cummings*, 142 S. Ct. at 1576. *Cummings* concerned claims under the Rehabilitation Act of 1973 and the Affordable Care Act; no claim under Title IX was asserted in that case. *See id.* at 1569. However, the Supreme Court expressly referenced Title IX in its decision. *See id.* (categorizing Title IX as one of the "four statutes" Congress enacted that "prohibit[s] recipients of federal financial assistance from discriminating based on certain protected grounds" along with Title VI of the Civil Rights Act of 1964, the Rehabilitation Act, and the Affordable Care Act). Since *Cummings* was decided last year, a number of federal courts have applied its logic to Title IX cases where plaintiffs have sought damages for emotional distress. From these cases, a majority rule has emerged: Title IX "claims for non-contractual damages (including emotional distress and reputational harm damages) are no longer valid." *Party v. Arizona Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2022 WL 17459745, at *4 (D. Ariz. Dec. 6, 2022).[2] Even before *Cummings* was decided, at least one circuit court concluded that "[e]motional harm standing alone is not a redressable Title IX injury." *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 622 (6th Cir. 2019).

---

[2] *See also Doe v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3036, 2022 WL 3566990, at *4 (D. Neb. Aug. 18, 2022); *Doe* 1 v. *Curators of Univ. of Missouri*, No. 19-CV-04229-NKL, 2022 WL 3366765, at *3 (W.D. Mo. Aug. 15, 2022); *Bonnewitz v. Baylor Univ.*, No. 621CV00491ADADTG, 2022 WL 2688399, at *4 (W.D. Tex. July 12, 2022); *Montgomery v. D.C.*, No. CV 18-1928 (JDB), 2022 WL 1618741, at *26 (D.D.C. May 23, 2022); *Doe v. Moravian Coll.*, No. 5:20-CV-00377-JMG, 2023 WL 144436, at *9 (E.D. Pa. Jan. 10, 2023); *Doe v. Fairfax Cnty. Sch. Bd.*, No. 118CV00614MSNIDD, 2023 WL 424265, at *6 (E.D. Va. Jan. 25, 2023); *Fisk v. Bd. of Trustees of California State Univ.*, No. 22-CV-173 TWR (MSB), 2023 WL 2919317, at *12 (S.D. Cal. Apr. 12, 2023); *Doe v. Town of North Andover*, No. 1:20-CV-10310-IT, 2023 WL 3481494, at *11 (D. Mass. May 16, 2023).

3. *Discussion*

   a. The Majority of Federal Courts Have Concluded that *Cummings* Precludes Damages for Emotional Distress on Title IX Claims

Having considered the Supreme Court's decision in *Cummings*, this Court joins the majority of courts that have weighed in on the issue and concludes that damages for emotional distress are not recoverable in suits brought under Title IX. This determination is fatal to Abdulsalam's case because she has not claimed any other kind of damages apart from damages related to emotional distress. The Regents' Opening Brief made a particular point of noting that apart from her misplaced claim for damages related to emotional distress, Abdulsalam did not allege any other damages. *See* Filing 53 at 7–9. Abdulsalam never directly addresses this argument in her opposition brief; nor does she suggest that she may otherwise be entitled to some other kind of damages. *See generally* Filing 60. To the contrary, Abdulsalam's Complaint alleges that she "has suffered ongoing damages including, but not limited to, humiliation, mental anguish, suffering, anxiety, and inconvenience, past, present, and future, all to her damage[,]" Filing 1 at 8 (¶41), and her opposition brief confirms that she is not seeking damages for anything else. *See* Filing 60 at 1. She plainly states, "Plaintiff, after having completed her education at [UNMC], filed this action. As a result, Plaintiff does not have any claim for tuition or moving expenses. Rather, her claim is for emotional distress." Filing 60 at 1.

Abdulsalam correctly notes that *Cummings* did not involve a Title IX claim. However, the Court sees no reason why its logic would not apply to Title IX claims. *See City of Pawtucket,* 2022 WL 4551953, at *3 ("It is no large leap to conclude that the Supreme Court's reasoning in *Cummings* applies to Title IX cases"). Just like the Rehabilitation Act and the Affordable Care Act, "Congress enacted Title IX pursuant to its authority under the Spending Clause[.]" *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 540 (7th Cir. 2022). *Cummings* was predicated on the

fact that the Rehabilitation Act and Affordable Care Act are "Spending Clause statutes[.]" *See Cummings*, 142 S. Ct. at 1570. "Thus *Cummings* applies with full force here." *Party*, 2022 WL 17459745, at *4; *see also id.* ("although it is true that the plaintiff in *Cummings* only asserted claims under the Rehabilitation Act and the ACA (and not under Title IX), the opinion makes clear that the Court's logic would apply in all 'actions brought to enforce Spending Clause statutes' and specifically identifies Title IX as one such statute" (quoting *Cummings*, 142 S. Ct. at 1569–70)). This Court joins the majority and "holds that *Cummings* applies to [Abdulsalam's] Title IX claims." *Curators of Univ. of Missouri*, 2022 WL 3366765, at *3.

As noted previously, Abdulsalam only points to one decision that departs from this majority view. *See* Filing 60 at 2 (citing *Doe v. Purdue Univ.*, 2022 WL 2828238). That decision is not persuasive, and this Court joins many other courts in disagreeing with the magistrate judge's order in that case. *See e.g.*, *City of Pawtucket*, 2022 WL 4551953, at *3 (noting "to the extent [that order] provides persuasive value, there is little to be found"); *Town of North Andover*, 2023 WL 3481494, at *11 (likewise concluding that the same order Abdulsalam cites "is not persuasive where the court provided no reasoning to support the conclusion"); *see also Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2022 WL 3279234, at *1 (N.D. Ind. Aug. 11, 2022), *on reconsideration in part*, No. 2:17-CV-33-JPK, 2023 WL 1991698 (N.D. Ind. Feb. 14, 2023) (concluding that the Supreme Court's decision in *Cummings* foreclosed the plaintiff's claim for emotional and psychological damages).[3] Thus, the lone outlying decision that Abdulsalam cites does not convince the Court that *Cummings* is inapplicable to Title IX cases.

---

[3] Although this case is also captioned, "*Doe v. Purdue Univ.*" it is a different case than the case Abdulsalam cites. Compare *Doe v. Purdue Univ.*, 2022 WL 2828238, at *1 (brought by Mary Doe and Nancy Roe against Purdue University in Case Number 18–CV–89 and assigned to the Lafayette Division) with *Doe v. Purdue Univ.*, 2022 WL 3279234, at *1 (brought by John Doe in Case Number 17–CV–33 and assigned to the Hammond Division).

### b. The Supreme Court has Consistently Analyzed Title IX as Having Been Passed Pursuant to the Spending Clause

The Court also rejects Abdulsalam's argument that Title IX's relation to the Fourteenth Amendment distinguishes it from other Spending Clause statutes. *See* Filing 60 at 3–5. Although she accepts that "[l]ike the Affordable Care Act and Rehabilitation Act, Title IX was enacted in part under the Spending Clause[,]" Abdulsalam insists "at least some of the authority under which Congress adopted Title IX derives from Section 5 of the Fourteenth Amendment." *See* Filing 60 at 3. Based on this theory, Abdulsalam posits that Title IX should be treated "differently than other statutes that were enacted pursuant to the Spending Clause" because "statutes that derive their authority from the Fourteenth Amendment" are not subject to the same constraints. *See* Filing 60 at 3, 5. She therefore reasons that "the analysis in *Cummings* is immaterial to the Court's inquiry in this case." Filing 60 at 3.

The Court concludes that "Congress passed Title IX pursuant to its authority under the Spending Clause." *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 815 (11th Cir. 2022); *accord Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 552–53 (3d Cir. 2017) (contrasting Title IX with Title VII based on the fact that "Congress enacted Title IX under its Spending Clause powers" whereas "Title VII is rooted in the Commerce Clause and § 5 of the Fourteenth Amendment, not the Spending Clause"). Abdulsalam primarily grounds her argument that some of Title IX is derived from Congress's authority to pass legislation pursuant to Section 5 of the Fourteenth Amendment in *Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1997). *See* Filing 60 at 3–5. Contrary to what she asserts in her brief, *Crawford* does not stand for the proposition "that at least some of" Title IX "derives from Section 5 of the Fourteenth Amendment." *See* Filing 60 at 3. Indeed, two years after the Eighth Circuit decided *Crawford*, the Supreme Court found occasion to note that it had "repeatedly treated Title IX as legislation enacted pursuant to

11

Congress' authority under the Spending Clause[.]" *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). Following *Davis*, the Eighth Circuit expressly acknowledged that "Title IX . . . was enacted pursuant to the Spending Clause." *Gross v. Weber*, 186 F.3d 1089, 1092 (8th Cir. 1999) (citing *Davis*, 526 U.S. at 640).

Furthermore, this exact same argument was recently rejected by the Western District of Missouri in a similar case. *See Curators of Univ. of Missouri*, 2022 WL 3366765, at *2. Just like the present case, the plaintiffs in that case "argue[d] that Title IX is not solely Spending Clause legislation" because "Congress also relied on the Fourteenth Amendment when it passed Title IX so *Cummings*, *Barnes*, and other cases about the Spending Clause do not apply." *Id.* The Western District of Missouri expressly disagreed with this position, reasoning that "in every case in which the Supreme Court has addressed the obligations imposed and the remedies available under Title IX, it has applied a Spending Clause analysis and analogized to contract law." *Id.* (compiling cases). That court likewise observed that "the Supreme Court has never analyzed Title IX as if it had been passed pursuant to Congress's power under the Fourteenth Amendment." *Id.* This Court agrees with the Western District of Missouri's conclusion in that case, and for the same reasons rejects Abdulsalam's argument that Title IX should be analyzed under a separate rubric than other Spending Clause statutes for purposes of determining whether damages for emotional distress are recoverable. This Court therefore concludes that Title IX was adopted pursuant to Congress's authority under the Spending Clause and is controlled by *Cummings*. As such, emotional damages are not recoverable under Title IX.

## III. CONCLUSION

For the foregoing reasons, the Court agrees with the Regents that because Abdulsalam has only claimed unrecoverable damages, "[t]his, then, leaves us with no other actual, recoverable

damages under Title IX." *See* Filing 53 at 8. Judgment on the pleadings in the Regents' favor is therefore appropriate. Accordingly,

    IT IS ORDERED:

    1. The University of Nebraska Medical Center is dismissed as an improperly named defendant in this case pursuant to Rule 17(b)(3) of the Federal Rules of Civil Procedure;

    2. The Regents are entitled to judgment on the pleadings in their favor pursuant to Rule 12(c) of the Federal Rules of Civil Procedure;

    3. The Court will enter a separate judgment; and

    4. This case is terminated.

    Dated this 29th day of June, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge